IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE STATE OF NEW MEXICO,<br><br>                *Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF THE INTERIOR and SALLY JEWELL, in her official capacity as Secretary of the Interior,<br><br>                *Defendants*. | Case No.____14-695_____<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

This case challenges the authority of the Secretary of the Interior to supplant the State of New Mexico's right to negotiate a tribal-state compact with the Pueblo of Pojoaque and to impose rules of the Secretary's choosing instead of a negotiated compact. New Mexico files this Complaint to obtain a declaration that the regulations set forth in 25 C.F.R. Part 291—"Secretarial Procedures"—violate the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2710 *et seq.*, exceed the authority that Congress granted the Secretary under the Act, and constitute an unconstitutional exercise of legislative authority in violation of the doctrine of separation of powers. New Mexico respectfully requests that the Court enjoin the Secretary of the Interior from implementing the process in 25 C.F.R. Part 291 to issue Secretarial Procedures for the Pueblo of Pojoaque, and alleges:

**PARTIES**

1. Plaintiff is the State of New Mexico ("State" or "New Mexico"), one of the sovereign states of the United States of America. Under IGRA, class III gaming is lawful only if "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State … that is in effect." 25 U.S.C. § 2710(d). New Mexico is responsible for negotiating tribal-state compacts with gaming tribes located in the State and, due to the Secretary of the

Interior's application of unlawful regulations, is an aggrieved person under 5 U.S.C. §§ 702, 701(b)(2), 551.

2. Defendants are the U.S. Department of the Interior ("Department"), and Sally Jewell, in her official capacity as the Secretary of the Interior. The Secretary has limited authority under IGRA to approve, disapprove, or allow to go into effect tribal-state gaming compacts and to prescribe gaming procedures in lieu of a tribal state compact when directed to by a court-appointed mediator. 25 U.S.C. §§ 2710(d)(3)(b), (d)(8)(A),(B),(C), (d)(7)(B)(vii). The Secretary has delegated this authority to the Assistant Secretary— Indian Affairs by part 209 of the Departmental Manual.

## VENUE AND JURISDICTION

3. The Court has both subject matter and personal jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706. The matter in controversy arises under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq*.

4. Venue is proper in the District of New Mexico under 28 U.S.C. § 1391(b) and (e)(2) because the United States, one of its agencies, and one of its officers in her official capacity are Defendants; a substantial part of the events and property affected by the litigation is related to this district; and the Plaintiff resides in this district.

5. The United States waived sovereign immunity from suit under 5 U.S.C. § 702. There is an actual controversy between the parties arising from Defendants' decision that the Pueblo of Pojoaque is eligible for Secretarial Procedures under 25 C.F.R. Part 291, which triggers an illegal regulatory proceeding that involves the State. Defendants' eligibility decision is a final agency action that is reviewable by the Court. 5 U.S.C. § 704; 25 C.F.R. § 291.6(b).

## STATUTORY FRAMEWORK

6. Congress passed IGRA in 1988 to oversee the establishment and regulation of tribal casinos on Indian lands. 25 U.S.C. §§ 2701 *et seq*.

7. IGRA outlines three classes of gaming, each of which is regulated differently: class I gaming consists of social games with prizes of minimal value, *id.* § 2703(6); class II

includes bingo and certain non-banked card games, *id*. § 2703(7)(A),(B); and class III includes all forms of gaming that are not class I or class II, including banked card games such as blackjack and baccarat, slot machines and other electronic gaming machines, and other Nevada-style gaming activities, *id*. § 2710(b)(7)(B),(b)(8).

8. Class I gaming on Indian lands is within the exclusive jurisdiction of the Indian tribes. *Id*. § 2710(a)(1).

9. Class II gaming is allowed on Indian lands if located within a state that permits such gaming for any purpose by any entity. *Id*. § 2710(b)(1)(A). Tribes have jurisdiction over class II gaming. *Id*. § 2710(a)(2).

10. Class III gaming activities are lawful on Indian lands only if such activities are authorized by a lawfully executed tribal ordinance that complies with the terms of IGRA, are located in a state that permits such gaming by any entity for any purpose, and are conducted in conformance with a tribal-state compact entered into by the Indian tribe and the state that is in effect. *Id.* § 2710(d).

11. A tribal-state compact is in effect if formally approved by the Secretary or allowed to go into effect. *Id.* § 2710(d)(1)(C), (3)(B), (8)(A).

12. When a tribe with Indian lands requests negotiation of a tribal-state compact in a state that permits such gaming, the state is required to "negotiate with the Indian tribe in good faith to enter into such a compact." *Id*. § 2710(d)(3)(A).

13. If, after 180 days of negotiation, no agreement has been reached, IGRA provides that the Tribe can bring suit in federal district court to determine whether the state has failed to negotiate or to negotiate in good faith. *Id.* § 2710(d)(7)(B)(i).

14. If, and only if, the court finds that the state failed in its duty to negotiate in good faith, then IGRA provides a remedial procedure. *Id.* § 2710(d)(7)(B)(iii)-(vii). IGRA sets forth specific remedial procedures for a court to follow upon finding that a state did not negotiate in good faith:

a. First, the court shall order the state and the Indian tribe to conclude such a compact within a 60-day period, *id.* § 2710( d)(7)(B)(iii);

b. If the state and tribe fail to negotiate a compact within that sixty-day period, "the Indian tribe and the State shall each submit to a mediator appointed by the court a proposed compact that represents their last best offer for a compact. The mediator shall select from the two proposed compacts the one which best comports with the terms of this chapter," *id.* § 2710( d)(7)(B)(iv);

c. The mediator submits his choice of compact to both parties, *id.* § 2710(d)(7)(B)(v);

d. The state has sixty days to consent to the proposed compact, *id.* § 2710(d)(7)(B)(vi);

e. If the state does not consent to the proposed compact, the mediator will notify the Secretary of the Interior, who shall then "prescribe, in consultation with the Indian tribe, procedures . . . which are consistent with the proposed compact selected by the mediator . . . the provisions of this chapter, and the relevant laws of the State," *id.* § 2710(d)(7)(B)(vii).

15. In *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), the Seminole Tribe sued the State of Florida, alleging that the State had failed to negotiate a tribal-state compact in good faith, as required under 25 U.S.C. § 2710(d)(3)(A). The State asserted the sovereign immunity guaranteed it under the Eleventh Amendment of the U.S. Constitution, and the Supreme Court held that Congress did not have the power to abrogate a state's sovereign immunity under the Indian Commerce Clause.

16. Following the *Seminole Tribe* decision, the Secretary promulgated regulations to establish procedures to govern class III gaming on Indian lands in lieu of a tribal-state compact in situations where a state asserts its sovereign immunity from suit. 63 Fed. Reg. 3,289 (Jan. 22, 1998). These rules are codified at 25 C.F.R. Part 291 ("Secretarial Procedures").

17. The Secretarial Procedures do not follow the remedial process Congress set out in IGRA. Instead, the process works as follows:

a. A tribe may request Secretarial Procedures when (1) the tribe and the state are unable to negotiate a compact within 180 days; (2) the tribe brings a lawsuit against the state under 25 U.S.C. § 2710(d)(3)(A); (3) the state asserts sovereign immunity from suit; and (4) the Federal district court dismisses the case. 25 C.F.R. § 291.3.

b. "Within 30 days of receiving a complete proposal, [the Secretary must] notify the Indian tribe in writing whether the Indian tribe meets the eligibility requirements in § 291.3." *Id.* § 291.6.

c. The Secretary will inform the Governor and the Attorney General of the affected state of her determination that the Tribe is eligible for Secretarial Procedures, submit for their consideration the Tribe's proposed compact, and allow the state sixty days to comment on the Tribe's proposal and to submit a proposed compact itself. *Id.* § 291.7.

d. If the state thereafter fails to submit its own proposed compact, the Secretary will either approve the Tribe's proposal or identify objections under the provision. *Id.* § 291.8.

e. If the state does submit its own proposed compact, the Secretary must appoint a mediator, who then selects one of the two proposals as the "one that bests comports with the terms of IGRA and any other federal law," and submits it to the parties. *Id.* §§ 291.9-10.

f. Within 60 days of receiving the mediator-selected proposal, the Secretary must notify the state and the tribe of her decision either to accept the mediator's selected compact or disapprove it. If rejected, the Secretary "must prescribe appropriate procedures within 60 days under which class III gaming may take place." *Id.* § 291.11.

g. The tribe then has 90 days to "approve and execute the Secretarial procedures," and the Secretary will publish notice of their approval in the Federal Register. *Id.* § 291.13.

18. The Secretarial Procedures do not include the procedural protections Congress mandated in IGRA, including requiring a judicial determination that the state failed to negotiate in good faith, an order directing the state and the tribe to conclude a compact within 60 days, and the selection of court-appointed mediator to choose from the state's and the tribe's last best offer, among other protections.

19. According to the deadlines established in the Department's regulations, the administrative process for establishing Secretarial Procedures takes approximately four to ten months to complete.

**FACTUAL BACKGROUND**

20. In 1995, the Governor of New Mexico negotiated tribal-state compacts with the Pueblos of Acoma, Isleta, Pojoaque, Sandia, San Felipe, San Juan, Santa Ana, Santa Clara, Taos and Tesuque, and the Jicarilla and Mescalero Apache Nations.

21. That same year, the New Mexico Supreme Court invalidated those compacts, concluding that the Governor lacked the authority to execute the compacts and that legislative ratification was required. *State ex rel. Clark v. Johnson*, 904 P.2d 11 (1995); *see also Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) (holding that the Secretary cannot vivify a compact that was executed in excess of gubernatorial authority).

22. In 1997, the New Mexico Legislature ratified compacts with 15 tribes ("1997 compacts"). The 1997 compacts included revenue-sharing agreements pursuant to which the Tribes agreed to pay 16% of net win to the State.

23. In 1999, the Legislature enacted the Compact Negotiation Act, N.M.S.A. § 11-13A-1 to 11-13A-5 (1978), to formalize the process for negotiating tribal-state compacts in the State of New Mexico. The Compact Negotiation Act requires the Governor to offer to all tribes the same terms included in any executed and ratified compact that the Governor negotiated with another tribe. *Id.* § 11-13A-4(J).

24. The terms of any executed tribal-state compact are available to all tribes, thus preventing any single tribe from obtaining terms more favorable than any other and ensuring Tribes are never left without a compact.

25. In 1999, the State sued the Tribes conducting gaming under the 1997 compacts for non-payment of revenue sharing agreed to in the 1997 compacts. To settle these suits, the Governor negotiated and the Legislature ratified new compacts ("2001 compacts") with all gaming Tribes, except for the Pojoaque Pueblo and the Mescalero Apache Tribe.

26. The 2001 compacts included a lower revenue-sharing rate schedule than what was contained in the 1997 compacts.

27. The Secretary formally approved the 2001 compacts, finding that they did not violate IGRA, federal law, or the Secretary's trust obligations.

28. In 2003, the Navajo Nation, previously a non-gaming Tribe, executed a 2001 compact with the State. In 2004, the Mescalero Apache Tribe settled suit and executed a 2001 compact, and in 2005, the Pojoaque Pueblo settled suit and executed a 2001 compact.

29. In 2007, the State negotiated amendments to the 2001 compacts ("2007 compacts"). In exchange for greater tribal gaming exclusivity from the State and an extended compact term of thirty years, the gaming Tribes agreed to an increased revenue sharing schedule.

30. The Pueblo of Pojoaque helped negotiate the 2007 compacts but then did not execute the new compact. The State executed the 2007 compacts with nine gaming Tribes—the Pueblos of Isleta, Laguna, Sandia, San Felipe, Santa Ana, Santa Clara, Taos, Tesuque, and Ohkay Owingeh—and two non-gaming Tribes—the Pueblos of Nambe and Picuris.

31. The Secretary approved the 2007 compacts, which will expire on June 30, 2037, as consistent with IGRA.

32. Due to the distribution of the population in the State and the close proximity of many of the tribes and pueblos, the State and the Tribes negotiated for a state-wide system of tribal exclusivity as opposed to carving out dozens of limited geographic zones. As a consequence, the Pueblo of Pojoaque has enjoyed the meaningful and valuable benefits flowing from the 2007 compacts, without having made the same concessions that the eleven other Tribes made and without any benefit accruing to the State.

33. The New Mexico Legislature amended the Compact Negotiation Act in 2007 to restrict the ability of gaming Tribes to adopt the 2007 compacts to a window of 240 days from its legislative ratification. N.M.S.A. § 11-13A-4(J).

34. In early 2012, the Pueblos of Pojoaque and Acoma and the Jicarilla Apache, Mescalero Apache and Navajo Nations formally requested compact negotiations pursuant to N.M.S.A. § 11-13A-3(A).

35. Through her designated representatives, Governor Susana Martinez has met with these five gaming Tribes to negotiate compact terms, including terms related to revenue sharing rates, the number of facilities permitted, industry standards, and other issues of concern to the State and the Tribes.

36. On December 13, 2013, the Pueblo of Pojoaque filed suit against the State in federal district court, alleging that the State violated IGRA by failing to conclude negotiations for a tribal-state compact in good faith, as required by 25 U.S.C. § 2710(d), because, among other things, the Pueblo does not seek the tribal gaming exclusivity all gaming Tribes, including the Pueblo of Pojoaque, negotiated in some form in the 2001 and 2007 compacts. *Pueblo of Pojoaque v. New Mexico*, Case No. 1:13-cv-01186-JAP-KBM (D. N.M. Dec. 13, 2013) [Dkt. No. 1].

37. The State did not waive its sovereign immunity from suit under the Eleventh Amendment. *Id.* [Dkt. No. 20]. The court dismissed the case on March 3, 2014. *Id.* [Dkt. No. 21].

38. By letter dated June 17, 2014, the Secretary informed the State that the Pueblo of Pojoaque was eligible for class III gaming procedures, pursuant to 25 C.F.R. Part 291. The letter informed the State that it has 60 days from the receipt of the letter (on June 23, 2014) to comment on whether (1) the State agrees with the Pojoaque's proposed class III gaming procedures; (2) the proposal is consistent with State law; and (3) contemplated gaming activities are permissible in the State; or to submit an alternative proposal to the Tribe's proposed class III gaming procedures.

39. Under the regulations that set forth the process for establishing Secretarial Procedures, the State must either submit comments to the Secretary by August 25, 2014 or forgo its right to protect its interests in the Secretary's illegal process.

40. The State is directly and immediately harmed by the Secretary's determination that the Pueblo of Pojoaque is eligible for Secretarial Procedures. IGRA's explicit remedial procedures are triggered only after a judicial determination that the State failed to negotiate in

good faith. Those remedial procedures provide the State protections that the process for developing Secretarial Procedures do not.

41. The State's sovereignty and dignitary interests are harmed by being compelled to choose between participating in illegal regulatory proceedings that supplant the State's right to negotiate a tribal-state compact in its sovereign capacity or forfeiting its right to protect the State's interests in the Secretary's illegal process.

42. The State's position in its continuing negotiations with the Pueblo of Acoma and the Jicarilla Apache, Mescalero Apache and Navajo Nations is harmed by the Secretary's eligibility determination.

43. The purported availability of a process to establish Secretarial Procedures disrupts the balance between federal, state and tribal interests that Congress struck in passing IGRA and harms the State by substantially diminishing the State's leverage in all tribal-state compact negotiations.

44. The State will suffer irreparable harm unless Defendants are enjoined from applying the Secretarial Procedures in 25 C.F.R. Part 291 to the Pueblo of Pojoaque's class III gaming application to operate in the State of New Mexico.

## VIOLATION OF IGRA AND THE APA

45. Each of the foregoing allegations is incorporated herein by reference.

46. The regulations for establishing Secretarial Procedures do not require a judicial determination that a state failed to negotiate in good faith, as required by 25 U.S.C. §2710(d)(7)(B)(iii).

47. The regulations for establishing Secretarial Procedures do not direct a state and a tribe to conclude a compact within sixty days, as required by 25 U.S.C. § 2710(d)(7)(B)(iii).

48. The regulations for establishing Secretarial Procedures do not provide for a court to appoint a mediator to resolve ongoing disagreement between a tribe and a state by selecting from the two proposed compacts the one which best comports with the terms of IGRA and any

other applicable federal law and with the findings and order of the court, as required by 25 U.S.C. § 2710(d)(7)(B)(iv).

49. The regulations establishing Secretarial Procedures do not allow a state to agree to the compact that the court-appointed mediator selects or provide that if the state consents to the proposed compact submitted by the mediator, the proposed compact shall be treated as a tribal-state compact, as required by 25 U.S.C. § 2710(d)(7)(B)(v), but instead permits the Secretary to approve or disapprove the proposed compact, *see* 25 C.F.R. § 291.11.

50. The regulations for establishing Secretarial Procedures set forth in 25 C.F.R. Part 291 violate the carefully prescribed remedial procedures Congress established in 25 U.S.C. § 2710(d)(7), and are contrary to law.

51. The Secretarial Procedures are ultra vires and constitute an unconstitutional assumption of legislative authority by the Secretary in violation of the doctrine of separation of powers.

**PRAYER FOR RELIEF**

WHEREFORE, the State of New Mexico respectfully requests that the Court enter judgment as follows:

A. Declaring that the regulations used to establish Secretarial Procedures in lieu of a tribal-state compact in 25 C.F.R. Part 291 violate the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq*.

B. Declaring that the Secretary, in promulgating the regulations in 25 C.F.R. Part 291, exceeded her authority under IGRA and unlawfully exercised legislative authority reserved for Congress in violation of the doctrine of separation of powers.

C. Permanently enjoining the Defendants from implementing the regulations set forth at 25 C.F.R. Part 291 to develop Secretarial Procedures in lieu of the tribal-state compact requirement for the Pueblo of Pojoaque.

D. Awarding its costs, attorney's fees and other expenses of this litigation.

E. Providing any such other relief that the Court may deem proper.

Date:  August 7, 2014                                  Respectfully submitted,

                                                               GENERAL COUNSEL
OFFICE OF THE GOVERNOR

/s/ Jessica M. Hernandez
Jessica M. Hernandez
Jeremiah L. Ritchie
490 Old Santa Fe Trail, Suite #400
Santa Fe, NM 87501-2704
Telephone:  (505) 476-2200
Facsimile:   (505) 476-2207

Jennifer A. MacLean (*pro hac vice pending*)
JMacLean@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005
Phone: (202) 434-1648
Fax: (202) 654-6211

Eric D. Miller (*pro hac vice to be submitted*)
EMiller@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Phone: (206) 359-3773
Fax: (206) 359-4773

*Special Assistant Attorneys General*
*The State of New Mexico*